**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | |
|---|---|
| JULIAN GALARZA SANTANA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, FOLKSTON ICE PROCESSING CENTER,<br><br>Respondent. | CIVIL ACTION NO.: 5:26-cv-12 |

**REPORT AND RECOMMENDATION**

Petitioner Julian Santana ("Santana") filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Doc. 1. Respondent filed a Motion to Dismiss, doc.7, and Santana filed a Response, doc. 13. For the following reasons, I **RECOMMEND** that the Court **DENY** Respondent's Motion to Dismiss, doc. 7. If the Court adopts my recommendation, I will set a hearing within 14 days of adoption and enter a scheduling order directing further briefing after the hearing, if necessary.

**BACKGROUND**

Santana is a citizen of Mexico who fled his home as a minor. Doc. 1 at 4. While in hiding, a humanitarian organization, Kids in Need of Defense ("KIND"), identified Santana as being eligible for humanitarian processing into the United States. Id. KIND secured an appointment for Santana and his family, and they presented at a port-of-entry on October 22, 2021. Santana was served with a notice to appear ("NTA"), charging him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I), and he and his family were released on humanitarian

parole. Doc. 7 at 4; Doc. 1 at 5. Santana has since lived in North Carolina where he attends college near his sister, a lawful permanent resident. Doc. 1 at 5.

On October 21, 2022, Santana filed an application for asylum and relief from removal, and an immigration judge later denied the application. Id. at 6. An immigration judge ordered Santana removed on March 17, 2025, and his appeal is still pending before the Board of Immigration Appeals ("BIA"). Doc. 4 at 3. Santana was detained when he appeared for an Immigration and Customs Enforcement ("ICE") check-in on October 22, 2025. Doc. 1 at 6. He has remained in detention in Folkston, Georgia, since then. Id.

In Count One of his Petition, Santana argues that the Department of Homeland Security's ("DHS") decision to detain him was without justification or consideration of his individualized circumstances and therefore violated his right to procedural due process.[1] Doc. 1 at 7. In Count Two, Santana claims that his detention violates his substantive due process rights because the detention is not justified under 8 U.S.C. § 1225(b)(2)(A). Id. at 11–14. Santana asks the Court to require Respondent to reinstate his parole and to release him or, in the alternative, to schedule a bond hearing before an immigration judge. Id. at 14.

Respondent states that Santana's order of removal is on appeal and, thus, he is lawfully detained under 8 U.S.C. § 1225(b)(2). Doc. 4 at 1–2.

## DISCUSSION

In his Motion to Dismiss, Respondent argues that Santana is lawfully detained because he is an "arriving alien who applie[d] for admission without valid entry documents" and is subject to removal. Doc. 7 at 5. According to Respondent, since Santana had no permission or

[1] Santana does not raise a prolonged detention claim in his Petition, despite citations to Zadvydas v. Davis, 533 U.S. 678 (2001). Doc. 1. Indeed, Santana had been in detention for less than three months' time when he filed his Petition. Should Santana wish to bring any such claim, he must file another Petition or, if permitted, amend his Petition in this case.

entitlement to enter the United States, detention is mandatory, and the fact that Santana was previously granted parole is immaterial. Id. at 6. Respondent asserts that Santana's parole could be terminated at any time for any reason without notice other than the issuance of an NTA and that Santana was given an NTA in 2021. Respondent states Santana's detention does not violate procedural or substantive due process. Id. at 6–11.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). And "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)).

However, for applicants for admission, that process is limited. At least as to their admission, for "aliens seeking initial entry, 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 104 (2020) (quoting Nishimura Ekiu v. United States, 142 U.S. 651, 660 (1892)). Put another way, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." Zadvydas, 533 U.S. at 693; see also Alexis v. United States AG, 431 F.3d 1291, 1295 (11th Cir. 2005) ("We have consistently held that excludable aliens have no constitutional right to admission into this country; they have only those rights statutorily granted by Congress.") (citation omitted).

The most familiar function of the Due Process Clause is "to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." Collins v.

City of Harker Heights, 503 U.S. 115, 125 (1992). Thus, procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty.'" Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

**I. Procedural Due Process**

Respondent asserts that Santana is not entitled to relief on his procedural due process claim. Doc. 7 at 6. Respondent asserts that courts apply the three-factor test set forth in Mathews v. Eldridge to determine whether governmental action violates a person's right to due process. Id. Respondent contends that application of the three-factor test favors the Government and shows the Petition should be dismissed. Id. at 7. Conversely, Santana states that the Mathews factors favor him on his procedural due process claim. Doc. 12 at 3–9.

Under Mathews, to identify "the specific dictates of due process" the Court must consider (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguard would entail." 424 U.S. at 335. "Due process is flexible and calls for such procedural protections as the particular situation demands." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

The Court notes the parties' reliance on the Mathews factors. However, it is unclear whether Mathews is controlling.[2] Moreover, even assuming that Mathews applies here, Mathews requires assessment of multiple, fact-intensive inquiries. Respondent has not

---

[2] I acknowledge that many other courts have applied Mathews in immigration detention cases, but the parties have not provided argument or authority clearly addressing whether the Mathews test is properly applied in this context.

demonstrated that the undisputed facts in the record cut so strongly in his favor that the Court should dismiss Count One. For example, the second Mathews factor requires the Court to assess the risk of an erroneous deprivation, but the parties have not provided argument or authority defining what constitutes an erroneous deprivation in this context and have not provided sufficient factual information to support the inquiry. Ultimately, Respondent has not shown that Count One should be dismissed on the current record.

To be sure, in concluding that Count One should not be dismissed, I express no view on whether Santana is entitled to his requested relief, only that Respondent does not meet his burden to show dismissal is appropriate at this time.

**II. Substantive Due Process Claim**

Respondent also seeks dismissal of Count Two, Santana's substantive due process claim. Respondent argues that, as an applicant for admission to the United States, Santana has the same rights as those presenting at the border despite him residing here for years. Doc. 7 at 9. Respondent cites Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020), for this notion, presumably relying on the "entry fiction" doctrine. Id. at 10.

Santana argues that his detention violates the Fifth Amendment's substantive due process guarantee because it has become "unreasonable, indefinite, and untethered to any legitimate governmental purpose." Doc. 13 at 9. Santana contends that Respondent has attempted to "use the harsh conditions of [of detention] to encourage him to withdraw his appeal and accept his deportation." Id.

To the extent that Respondent argues that Count Two should be dismissed because of application of the entry-fiction doctrine, Respondent's argument is unconvincing.[3] I addressed the entry-fiction doctrine extensively in my Alekhin Report and Recommendation. See Alekhin v. Warden, Case No. 5:25-cv-58, ECF No. 36. In that Report and Recommendation, I concluded that the entry-fiction doctrine typically only applies to limit immigrants' procedural rights in the admissions process, and it does not preclude claims concerning unreasonably prolonged immigration detention. Id. at pp. 9–17. Given the analysis of the entry-fiction doctrine in the Report and Recommendation in Alekhin, it is unlikely that the entry-fiction doctrine would preclude Petitioner's substantive due process in Count Two. However, I note that the parties have not fully addressed the issue.[4] At a minimum, the parties must develop the briefing more fully on the application of the entry-fiction doctrine to Petitioner's substantive due process claim.

To the extent Respondent is arguing that Count Two should be dismissed because Santana's detention is consistent with lawful immigration rules and procedures, that argument is also unconvincing. Santana claims in Count Two that his detention "has become unreasonable, indefinite, and untethered to any legitimate governmental purpose." Doc. 13 at 9. Respondent does not appear to refute these factual assertions; instead, Respondent merely argues that Santana's detention is consistent with applicable laws and rules. Respondent's briefing, and the record as a whole, is not sufficient for the Court to assess whether Santana's Count Two should

[3] Respondent's argument in favor of dismissal of Count Two is difficult to discern. Respondent generally contends that immigration rules and procedures are lawful and Santana is detained in accordance with those rules and procedures. But Respondent also cites Thuraissigiam, seemingly invoking the "entry fiction" doctrine and, presumably, arguing that Santana has no due process rights beyond what is provided in the relevant statutes. Doc. 13 at 10.

[4] Respondent filed the instant Motion to Dismiss months before I issued the Report and Recommendation in Alekhin. Therefore, Respondent understandably does not address the analysis of the entry-fiction doctrine in Alekhin.

be dismissed at this stage. Therefore, the Court should deny Respondent's Motion to Dismiss Count Two.

As with Count One, I express no view on whether Santana is entitled to relief on Count Two. Instead, I merely conclude that Respondent has not shown that Count Two should be dismissed at this time.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DENY** Respondent's Motion to Dismiss, doc. 7. If the Court adopts my recommendation, I will set a hearing within 14 days of adoption and enter a scheduling order directing further briefing after the hearing, if necessary.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Petition must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may

not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 2nd day of September, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA